

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

David Becsey
Zeigler Cohen & Koch
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Katherine Modesitt Cooper
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Tony Hatchett,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

May 28, 2015

Court of Appeals Case No.
49A02-1408-CR-561

Appeal from the Marion Superior
Court

Lower Court Cause No.
49F18-1404-FD-22193

The Honorable William Nelson,
Judge

**Pyle, Judge.**

# Statement of the Case

Appellant/Defendant, Tony Hatchett ("Hatchett"), appeals his two convictions of Class D felony invasion of privacy[1] which were based on his violation of a protective order and a no-contact order. He objected to one of the trial court's final jury instructions at trial, arguing that it misled the jury on the law regarding invasion of privacy. The trial court tendered the instruction over Hatchett's objection, and now on appeal he argues that the trial court improperly instructed the jury. We conclude that the trial court did not improperly instruct the jury and that, regardless, any potential error did not prejudice Hatchett's substantial rights because there was sufficient evidence to support his conviction. However, sua sponte, we conclude that Hatchett's two convictions, both based on the same telephone call, violate the actual evidence test for double jeopardy under the Indiana Constitution. We reverse and remand to the trial court with instructions to vacate one of Hatchett's convictions for Class A misdemeanor invasion of privacy as well as its enhancement to a Class D felony.

We affirm in part, reverse in part, and remand.

---

[1] IND. CODE § 35-46-1-15.1(1)(2)(3)(5)(6). Effective July 1, 2014, the Indiana Legislature amended the invasion of privacy statute, and a Class D felony would now be considered a Level 6 felony. However, because Hatchett committed his offense in March 2014, we will apply the version of the statute in effect at that time.

# Issue

Whether the trial court abused its discretion when it instructed the jury on the law regarding invasion of privacy.

# Facts

[1] On March 22, 2014, Hatchett was prohibited from contacting Janetta Buckhalter ("Buckhalter"), the mother of his child, as a result of a no-contact order and a protective order that were in effect. The orders prohibited contact "by telephone, letter, or any other way, either directly or indirectly." (Tr. 12-13). Detective Donna Hayes ("Detective Hayes") of the Indianapolis Metropolitan Police Department had served Hatchett with the protective order and knew that Hatchett was aware of and had notice of both orders. Nevertheless, that same day, on March 22, 2014, a man called Buckhalter from the Marion County Jail and spoke with her and her daughter. Although the man used another inmate's identification number, Buckhalter recognized Hatchett's voice, and the call was placed from Hatchett's cell block at the jail.

[2] Subsequently, on April 30, 2014, the State charged Hatchett with two counts of Class A misdemeanor invasion of privacy for the telephone call and also charged that the two counts should be enhanced to Class D felonies because Hatchett had a prior unrelated conviction for invasion of privacy. The trial court held a jury trial on the charges on July 10, 2014.

[3] At trial, Sergeant Wanda Placencia ("Sergeant Placencia"), a Marion County Sheriff's Office detective in charge of monitoring inmate phone calls at the Marion County Jail, testified to the procedure that inmates must follow in order

to make phone calls while incarcerated. She said that an inmate who is making a call must use his individual booking number and unique pin number and must enter the telephone number he is calling in order to connect. The inmate must also say his name so that the person on the other end of the connection knows who is calling. She clarified that all of the phone calls from the jail are monitored and recorded and that the jail can identify the time, location, and length of a phone call. However, she also acknowledged that, in practice, inmates are able to use each other's unique identification numbers to place calls, even though they are not allowed to do so.

[4]     Detective Hayes also testified at trial and said that she had listened to the recording of the phone call between the inmate who was allegedly Hatchett and Buckhalter on March 22 and recognized Hatchett's voice. She had engaged in a forty to fifty minute conversation with Hatchett when she served his protective order and was therefore familiar with his voice.

[5]     At the conclusion of the trial, the State tendered a proposed jury instruction that became Final Jury Instruction Number 15. It provided:

> When determining whether a party committed the act of invasion of privacy, we do not consider whether Ms. Buckhalter knowingly ignored the protective order but, rather, whether the defendant knowing[ly] violated the protective order.

(App. 68-A). Hatchett objected to the phrase "we do not consider whether Buckhalter knowingly ignored the protective order" and argued that it was an incorrect statement of the law as applied to his case because he had never

contended that Buckhalter had consented to the contact. (App. 68-A). He asserted that, because consent was not an issue, the instruction could confuse the jury. In response, the State noted that the issue of consent was brought up "by several different potential jurors" during jury selection and was "something that was on people's minds[.]" (Tr. 63). Thus, the State asserted that the instruction was necessary so that the jury would understand that Hatchett's mere contact with Buckhalter was sufficient to prove a violation of the protective and no contact orders, regardless of whether Buckhalter consented to the contact.

[6] The trial court accepted the State's tendered jury instruction over Hatchett's objections, noting that:

> I'm going to go ahead and allow this instruction . . . because the confusion, based on the voir dire, the confusion seems to be somehow relevant when it is not. This makes it clear that that is not relevant. Two, I believe as to the issue of consent, certainly anyone with any kind of intelligence can imply that there was consent simply by the fact that she didn't hang up.

(Tr. 64). The trial court further found that the instruction was not overly prejudicial to Hatchett.

[7] The jury found Hatchett guilty of both counts as Class A misdemeanors. Hatchett waived a jury trial on the enhancements for his convictions, and the trial court enhanced both convictions to Class D felonies as a result of his prior unrelated conviction for invasion of privacy. The Court sentenced Hatchett to

730 days for each count and ordered the sentences to be served concurrently. Hatchett now appeals.

# Decision

[8] On appeal, Hatchett argues that the trial court abused its discretion when it instructed the jury because, according to Hatchett, the instruction misapplied the law applicable to his case and confused the jury. We afford trial courts broad discretion in the manner of instructing a jury, and we review such decisions only for an abuse of that discretion. *Hayden v. State*, 19 N.E.3d 831, 838 (Ind. Ct. App. 2014), *reh'g denied.* When reviewing jury instructions on appeal, we look to: (1) whether the tendered instructions correctly state the law; (2) whether there is evidence in the record to support giving the instruction; and (3) whether the substance of the proffered instruction is covered by other instructions. *Id.* We will reverse a conviction only where the appellant demonstrates that an error in the jury instructions prejudiced his substantial rights. *Id.* "'[W]here a conviction is clearly sustained by the evidence and the jury could not properly have found otherwise,'" we will not reverse the conviction. *Id.* (quoting *Johnson v. State*, 959 N.E.2d 334, 338 (Ind. Ct. App. 2011)).

[9] Hatchett acknowledges that Final Jury Instruction Number 15 was an accurate statement of the law, but he argues that part of the instruction—"we do not consider whether Buckhalter knowingly ignored the protective order"—was inapplicable to him because he did not argue that Buckhalter had consented to

his telephone call. (App. 68-A). He notes that the trial court justified its decision to tender the instruction based on the State's argument that potential jurors had been confused by the issue of consent during voir dire and on its belief that "anyone with any kind of intelligence can imply that there was consent simply by the fact that she didn't hang up." (Appellant's Br. 4). He argues that these justifications for granting the instruction were subjective and had nothing to do with the evidence he presented. In support of these contentions, he notes that he did not say anything about the issue of consent at trial, so the jurors should not have believed that he was raising a defense that Buckhalter had consented to the contact.

[10] We disagree that Hatchett did not imply that Buckhalter had consented to his contact. During his cross-examination of Buckhalter at trial, the following exchange occurred between Hatchett's counsel and Buckhalter:

> [DEFENSE COUNSEL:] [Buckhalter], you said that the number that that phone call was made [to] was [xxx-xxxx][2], correct?
>
> [BUCKHALTER:] Yes.
>
> [DEFENSE COUNSEL:] And is that a different phone number than you had when you and [Hatchett] were together?
>
> [BUCKHALTER:] Yeah.

(Tr. 57). The implication of this line of questioning—and these were the only two questions that Hatchett's defense counsel asked Buckhalter—was that

---

[2] We have redacted this phone number to maintain confidentiality.

Buckhalter had given Hatchett her new number and therefore consented to his contact.[3] Thus, because Hatchett himself implied that Buckhalter had consented to the contact, we conclude that the jury instruction was a proper clarification of the law with respect to the evidence in this case.

[11] Likewise, as the trial court concluded, the jurors could have been confused by the issue of consent during voir dire. Hatchett argues that the trial court's conclusion that the jurors were confused is subjective because the trial court did not know whether the potential jurors who were confused during voir dire became jury members during the trial. However, because Hatchett has not provided us with a transcript of the voir dire process, we cannot assess his argument. A criminal defendant has a duty to provide a proper record to facilitate intelligent review of an appellate issue, and the failure to do so has been found to be grounds for waiver of any alleged error based upon the absent material. *Cox v. State*, 475 N.E.2d 664, 667 (Ind. 1985). Accordingly, we conclude that Hatchett has waived his argument regarding voir dire by failing to provide a complete transcript.

[12] In addition, even if we were to conclude that the trial court abused its discretion when it instructed the jury, the error is not reversible on appeal because it did not prejudice Hatchett's substantial rights. *Hayden*, 19 N.E.3d at 838

---

[3] On re-direct, the State clarified that other members of Hatchett's family had Buckhalter's new phone number and could have given it to him.

("'[W]here a conviction is clearly sustained by the evidence and the jury could not properly have found otherwise,'" we will not reverse the conviction). There was sufficient evidence that Hatchett contacted Buckhalter, and the jury could not have found otherwise.

[13] A person commits invasion of privacy if that person: "knowingly or intentionally violates: (1) a protective order to prevent domestic or family violence issued under [I.C. § 34-26-5] (or, if the order involved a family or household member, under [I.C. § 34-26-2 or I.C. § 34-4-5.1-5] before their repeal" or "(5) a no contact order issued as a condition of pretrial release, including release on bail or personal recognizance or pretrial diversion, and including a no contact order issued under [I.C. § 35-33-8-3-6]." I.C. § 35-46-1-15.1-1.

[14] Here, the State and Hatchett stipulated to the existence of the no-contact and protective orders and to the fact that Hatchett knew about and had notice of the orders. In addition, Detective Hayes and Buckhalter both testified that they recognized Hatchett's voice on the telephone call to Buckhalter on March 22, and the call was placed from Buckhalter's cell block at the jail. In light of this evidence, we conclude that any potential error in the trial court's Final Jury Instruction Number 15 did not prejudice Hatchett's substantial rights, and we will not reverse Hatchett's convictions. *See Hayden*, 19 N.E.3d at 838.

[15] However, sua sponte, we do note that the same evidence—Hatchett's March 22 telephone call to Buckhalter—was used to prove Hatchett's violation of both the

no-contact order and the protective order. This violates the "actual evidence" test for the Double Jeopardy Clause of the Indiana Constitution, which prohibits using the same evidentiary facts to establish the essential elements of two different offenses. *Hines v. State*, No. 52S05-1408-CR-563, *6 (Ind. May 19, 2015). In determining the facts used by the fact-finder, "'it is appropriate to consider the charging information, jury instructions, [] arguments of counsel' and other factors that may have guided the jury's determination." *Id*. at *7 (citations omitted). If there is a reasonable possibility that the jury used Hatchett's March 22 phone call to Buckhalter to establish the essential elements of both counts of invasion of privacy, then Indiana's Double Jeopardy Clause is violated.

[16] In this case, the elements of both counts of invasion of privacy are established by showing that Hatchett knowingly or intentionally violated (1) a protective order to prevent domestic or family violence, or (2) a no contact order issued as a condition of pretrial release. I.C. § 35-46-1-15.1(1), (5). In its charging information, the State alleged that Hatchett's March 22 telephone call from the jail was the sole piece of evidence violating both counts of invasion of privacy. Likewise, the jury instructions given by the trial court inform the jury that Hatchett's March 22 telephone call was the only piece of evidence to be considered in determining whether the protective order or no contact order were violated. As a result, the jury used the same evidence to establish the essential elements of both offenses. Accordingly, we reverse and remand to the trial court with instructions to vacate one of Hatchett's convictions for Class A

misdemeanor invasion of privacy, as well as the merged count enhancing it to a Class D felony.

Affirmed.

Crone, J., and Brown, J., concur.